UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| VENMAR VENTILATION, INC., | Civil No. 07-1314 (JRT/FLN) |
| Third-Party Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| VON WEISE USA, INC., f/k/a/ FASCO INDUSTRIES, INC. | |
| Third-Party Defendant. | |

William A. Lemire, Christopher D. Newkirk, and Timothy J. Carrigan, **ARTHUR, CHAPMAN, KETTERING, SMETAK & PIKALA, P.A.**, 500 Young Quinlan Building, 81 South Ninth Street, Minneapolis, MN 55402, for third-party plaintiff.

Hal A. Shillingstad and Andrea D. Kiehl, **FLYNN, GASKINS & BENNETT, LLP**, 333 South Seventh Street, Suite 2900, Minneapolis, MN 55402, for third-party defendant.

This matter is before the Court on third-party defendant Von Weise USA, Inc.'s ("Von Weise") objections to a Report and Recommendation issued by United States Magistrate Judge Franklin L. Noel on October 24, 2008. The Magistrate Judge recommended denying Von Weise's motion for summary judgment. After a *de novo* review of those objections, *see* 28 U.S.C. § 636(b); Local Rule 72.2(b), the Court adopts the Report and Recommendation for the reasons stated below.

**BACKGROUND**

In March 2005, a heat recovery ventilator ("HRV") owned by Jon and Diane Taxdahl caught fire, causing extensive damage to their home. (Compl., Docket No. 1,

¶ 4.)   The HRV was manufactured by Venmar Ventilation, Inc. ("Venmar"), and contained a motor manufactured by Von Weise, formerly known as Fasco Industries, Inc. ("Fasco").[1]  (Third-Party Compl., Docket No. 11.).  The Taxdahls filed an action against Venmar on February 26, 2007.  (Compl., Docket No. 1.)  In April 2007, Venmar brought a third-party complaint against Fasco, and later settled with the Taxdahls.  (Third-Party Compl., Docket No. 11; Stipulation for Dismissal With Prejudice, Docket No. 99.)  Venmar alleges that Fasco negligently failed to provide warnings about dangers created by the Fasco motor, and seeks contribution for the damages to the Taxdahls' home.

Venmar contends that the Fasco motor was dangerous because it included a "cycling" thermal protector instead of a "one-shot" thermal protector.  Thermal protectors regulate electrical current and are designed to shut down the motor when it gets too hot.  (*See* LeMire Aff., Docket No. 87, Ex. K.)  After shutting the motor down, a cycling thermal protector allows the motor to turn back on once it is cool.  (*Id*., Ex. F at 54-56.)  In contrast, a one-shot protector permanently shuts down the overheated motor, and the motor must then be replaced.  (*See id*., Ex. C at 62.)  Venmar claims that Fasco had a duty to recommend a one-shot thermal protector instead of the cycling thermal protector, because Fasco knew that a cycling protector could eventually wear down through repeated use, and could ultimately cause a fire by failing to turn off an overheated motor.

Fasco, on the other hand, claims that the actual cause of the Taxdahl's fire was another part of the HRV called the capacitor.  The capacitor sits on top of the motor to

---

[1] For ease of reference, the Court adopts the parties' practice of using the name Fasco when referring to the third-party plaintiff.

help it run more efficiently. (Shillingstad Aff., Docket No. 79, Ex. S at 11.) Some capacitors include devices that automatically shut down the capacitor if the pressure inside of it gets too high. (*Id*., Ex. A at 52.) Venmar originally purchased capacitors from Fasco that included this protective device, but later elected to purchase capacitors from other suppliers that did not include this protection. (*Id*., Ex. A at 51-52.)

Venmar adds that it has a close, collaborative relationship with Fasco in the design of its HRVs. (*See, e.g.*, Forest Aff., Docket No. 93, ¶¶ 5-15.) Affidavits from Venmar employees indicate that Venmar had little expertise in motor design and relied on Fasco to design a custom motor for the HRVs. (*See, e.g.*, To Aff., Docket No. 88, ¶ 8.) Venmar employees further aver that they relied on Fasco's recommendations for how to incorporate Fasco's custom motors into the final, integrated HRV. (*See, e.g.*, Forest Aff., Docket No. 93, ¶ 13.) Fasco disputes this characterization, arguing that it had no role in designing Venmar's final product.

Fasco now moves to dismiss Venmar's third-party complaint on summary judgment. On October 24, 2008, the Magistrate Judge issued a Report and Recommendation recommending that the motion be denied. The Magistrate Judge determined that (1) there are genuine issues of material fact as to whether Fasco's participation in the design of the HRVs was sufficient to trigger a duty to warn; and (2) there are genuine issues of material fact as to whether certain indemnification terms were incorporated into the parties' final contract, preventing the Court from concluding as a matter of law that Venmar agreed to indemnify Fasco for any damages. Fasco now objects to the Report and Recommendation on three grounds: (1) Fasco did not

substantially participate in the HRV design and is therefore protected from liability by the Component Part Supplier Doctrine; (2) the Report and Recommendation fails to apply case law demonstrating the level of participation required for the "substantial participation" exception to the Component Part Supplier Doctrine; and (3) Venmar has failed to demonstrate all of the elements required for a claim of negligent failure to warn.[2]

## ANALYSIS

### I.   STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P 56(c). A fact is material if it might affect the outcome of the case, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[2] Because Fasco does not object to the Magistrate Judge's assessment of its indemnification defense, the Court adopts the Magistrate Judge's analysis of that issue without further discussion.

**II.     FASCO'S OBJECTIONS**

    **A.     The Component Part Supplier Doctrine and the "Substantial Participation" Exception**

Fasco first argues that it is shielded from liability by the Component Part Supplier Doctrine. Under the Component Part Supplier Doctrine, a manufacturer of a non-defective, multi-use component part is generally not liable for injuries caused by the finished product when its parts are integrated into a larger system. *In re Temperomandibular Joint (TMJ) Implants Prods. Liability Litig.*, 97 F.3d 1050, 1056 (8th Cir. 1996) (applying Minnesota law). There is, however, an exception to this doctrine. A component part supplier may be liable if the supplier "exercised some control over the design of the final product." *In re TMJ Implants,* 97 F.3d at 1057 n.8; *see also Estate of Carey by Carey v. Hy-Temp Mfg., Inc.*, 702 F. Supp. 666, 670 (N.D. Ill. 1988) ("[T]he component maker can be held liable if it does control or influence how the component is incorporated into the final product."). Courts and treatises elsewhere have clarified that this exception requires "substantial participation" in the integration of a component into a final product in order for the component's supplier to be liable. *See* Restatement (Third) of Torts: *Products Liability* §5(b)(1); *Buonanno v. Colmar Belting Co. Inc.*, 733 A.2d 712, 719 (R.I. 1999) ("We hold that this case stands for the proposition that the primary duty is owed by the designer of the assembled machine and not the supplier of the component parts **in the absence of substantial participation** in the integration of the component into the design of the product.") (emphasis added). Finally, this "substantial participation" exception has been applied specifically in cases addressing the duty to

warn. *See In re TMJ Implants*, 97 F.3d at 1058 (finding no duty to warn where, *inter alia*, the component supplier "exercised no control over the design, testing, or manufacturing" of the final product); *Crossfield v. Quality Control Equip. Co.*, 1 F.3d 701, 706 (8th Cir. 1993) (finding that a defendant had no duty to warn under Missouri law because, *inter alia*, the component supplier "had no connection with the design or installation" of the integrated product).

Thus, Fasco may be liable for failing to warn of potential defects in the use of the Fasco motor in the integrated Venmar HRV if it "substantially participated" in the integration of that motor into the design of the HRV. As the Magistrate Judge thoroughly explained, Venmar has presented sufficient evidence of such "substantial participation" to defeat summary judgment. Venmar submitted an affidavit from its vice president of research and development indicating that Venmar "repeatedly consulted with [Fasco] representatives during the period in which we developed Venmar Ventilation's first HRVs." (To Aff., Docket No. 88, at ¶ 5). This employee further indicated that Fasco "completely designed the blower [a motor with a fan and a thermal protector included]," which is "the most important part of the HRV," and that Fasco's recommendation about which blower to use "affected how we configured the HRV's shape and size." (*Id*., ¶¶ 13-15). Another employee indicated that Venmar "provided and showed Fasco detailed information about our new products and Fasco in turn actively participated in the evolutive HRV design process by providing advice and recommendations." (Forest Aff., Docket No. 93, ¶ 13.) A third employee described visits by Venmar and Fasco employees to each other's facilities, and indicated that "[g]iven the importance of the

motor to our HRVs, it is accurate to say Fasco was a business partner rather than a mere parts supplier." (Janelle Aff., Ex. 90, ¶¶ 10-11.)  Finally, Venmar has provided a series of faxes and drawings that could – along with the affidavits referenced above – support a finding that Fasco "substantially participated" in the HRV design.  (*See* Forest Aff., Docket No. 93, Exs. A-J.)  In those circumstances, the Court agrees with the Magistrate Judge that there is a genuine issue of material fact as to whether Fasco "substantially participated" in the design of the HRV.

Fasco argues that this Court should nonetheless grant its motion for summary judgment because there are "depositions and thousands of pages of competent evidence" that contradict the sworn statements of Venmar's employees.  Fasco further argues that many of the Venmar witnesses had been involved in HRV design in earlier time periods, and were not in a position to know specific details about the exact HRV model involved in the fire.  In another case, Fasco criticizes Venmar's testimony by noting that a witness "was not the designer of the HRV," but rather "supervised the designers," who allegedly contradicted their supervisor in their testimony.  These contentions, however, go to the weight of Venmar's evidence, rather than its legal sufficiency.  Even where witnesses are not able to speak to the exact model that was involved in the Taxdahls' fire, their testimony as to the practices that had developed between Venmar and Fasco in the development of prior HRV models would certainly be probative as to their approach to later models.  Ultimately, the question of whether this and the rest of Venmar's evidence is outweighed by the evidence relied on by Fasco is simply a question for a jury.

Fasco separately argues that the Magistrate Judge ignores case law that establishes a particularly high bar for establishing "substantial participation." Fasco argues that in *Thompson v. Hirano Tecseed Co., LTD*, 456 F.3d 805 (8th Cir. 2006), the Eighth Circuit

> found the component part supplier substantially participated because it observed and assisted in the installation of its part into the whole system, it provided training for the whole system, it tested the system, it observed the subject-defect and instructed users on how to work around the defect, and a contract between the parties existed placing responsibility for the design of the system on [the component part supplier].

(Objections, Docket No. 110 at 10.) Fasco argues that Venmar has failed to submit similar specific facts.

Nothing in *Thompson*, however, demonstrates that the Magistrate Judge reached an improper result. As an initial matter, the defendant in *Thompson* was the manufacturer of the entire product in question, not merely a component part. *Thompson,* 456 F.3d at 808-09. The question before the court was "whether a manufacturer is liable for a design defect if it follows a customer's specifications in manufacturing a finished product." *Id.* at 809. To the extent that *Thompson* drew an analogy to the component supplier doctrine – to determine whether the manufacturer sufficiently participated in the disputed design to be held liable – nothing in *Thompson* purports to establish an exclusive list of facts that must be met in order to establish "substantial participation." Substantial participation can take various forms, including designing a component that will perform specifically as part of the integrated product, or deciding which component best serves the requirements

of the integrated product.  *See* Restatement (Third) of Torts: *Product Liability*, §5, cmt. e.[3]

### B. Negligent Failure to Warn

Fasco also argues that Venmar has not established one of the prima facie elements of a negligent failure to warn and therefore fails in its claim as a matter of law.  Under Minnesota law, to establish a claim for negligent failure to warn, Venmar "must show that: (1) there was a duty to warn about the risk in question; (2) the warnings given, if any, were inadequate; and (3) the lack of an adequate warning was the cause of the plaintiff's injuries."  *U.S. Xpress, Inc. v. Great N. Ins. Co.*, No. 01-195, 2003 WL 124021, *4 (D. Minn. 2003) (citing *Balder v. Haley*, 399 N.W.2d 77, 81 (Minn. 1987)).

Fasco argues that Venmar has failed to establish that its alleged failure to warn caused the injury.  According to Fasco, Venmar's claim is that Fasco failed to warn that a cycling protector could fail in a "closed" position,[4] and thereby cause a fire.  Fasco argues that in order to satisfy this third element, Venmar must show that the thermal protector in the Taxdahls' HRV actually failed in a closed position.  Fasco claims that

---

[3] Fasco also briefly argues that "courts have held that without knowledge of the final product, the component part manufacturer cannot be said to have substantially participated." (Objections, Docket No. 110 at 10.)  While it is unclear what Fasco believes was lacking in its notice, there is adequate evidence that Fasco participated in the design of Venmar HRVs from their inception, and that Fasco was aware of the design, specifications, and operating parameters of the finished Venmar HRV product.

[4] The cycling protector is designed to regulate electrical current by "opening" and "closing."  (LeMire Aff., Docket No. 87, Ex. F at 54-55.)  Once the motor reaches a particular temperature, two small metallic contacts "open."  (*Id*.)  This stops the electrical current from flowing to the motor and allows the motor to cool.  (*Id*.)  Once the motor is sufficiently cool, the contacts close again, allowing the electrical current to continue.  (*Id*.)

Venmar has not, and cannot, establish this element. In response, Venmar argues that Fasco's explanation of Venmar's failure to warn claim represents only "half" of that claim. The other half, Venmar argues, is simply that Fasco failed to tell Venmar of an existing safer alternative – the one-shot thermal protector – and that **this** failure caused the Taxdahls' fire.

Regardless of how broadly Venmar's claim is characterized, the Court agrees with the Magistrate Judge that Venmar has provided sufficient evidence to defeat summary judgment. Testimony from Fasco suggests that it had been aware far in advance of this incident that an aging cycling protector could fail in a closed position, and that this could cause a fire. (LeMire Aff., Docket No. 87, Ex. F at 32-36.) In addition, Venmar has submitted an expert report by Dr. Robert J. Svare, which concludes the following: (1) the Taxdahls' fire started inside the HRV's blower motor, which was manufactured by Fasco, (*id*., Ex. X at 1); (2) the Fasco motor's cycling thermal protector provided inadequate protection against overheating, creating a risk that the protector would fail in a closed position and cause a fire, (*id*., at 7); (3) one-shot protectors were available and known to Fasco before it manufactured the Taxdahls' motor and the fire would have been avoided had Fasco used one, (*id*., at 8); (4) Fasco failed to tell Venmar about the problems with auto-resetting thermal protectors and the Taxdahls' fire would have been avoided if it had done so, (*id*., at 18); and (5) Fasco's use of an auto-resetting thermal protector was negligent, (*id*., at 19-20).

The Court agrees that a reasonable jury could find this to be sufficient evidence that Fasco's failure to recommend the one-shot thermal protector caused the Taxdahls'

fire. In addition, in light of the evidence about the specific vulnerabilities of the cycling protector, a reasonable jury could rely on this evidence to infer that the fire occurred after the protector failed in a closed position. In sum, viewing the evidence in the light most favorable to Venmar, this Court finds that a genuine issue of material fact remains as to whether Fasco's failure to warn caused the Taxdahls' damages.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, the Court **OVERRULES** Third-Party Defendant's objections [Docket No. 110] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated October 24, 2008 [Docket No. 109]. **IT IS HEREBY ORDERED** that the Third-Party Defendant's Motion for Summary Judgment [Docket No. 75] is **DENIED.**

DATED: March 24, 2009  
at Minneapolis, Minnesota.

\_\_\_\_s/ John R. Tunheim_____  
JOHN R. TUNHEIM  
United States District Judge